UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| DORA ESCOBEDO and LYDIA OLIVAREZ | ) |
| --- | --- |
| Plaintiffs, | ) |
| v. | ) No. 1:08-cv-01002 |
| PATRICK J. ROGERS AND AL ROMERO | ) |
| Defendants. | ) |

DEFENDANT PATRICK J. ROGERS RESPONSE TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SUPPORTING MEMORANDUM

Defendant Patrick J. Rogers, by and through his counsel of record, Jason Bowles and B.J. Crow of Bowles & Crow, hereby responds to Plaintiffs' Application for Temporary Restraining Order and Supporting Memorandum and states as follows in support thereof.

1. Introduction.

Plaintiffs have *voted.* There is no threat of harm, imminent or otherwise, to Plaintiffs in any lawful exercise of their rights. In addition, Defendant's right and his client's rights to challenge the integrity of the vote is critical to an open and honest election and to provide the public with confidence in the process. Plaintiffs Complaint and TRO application allege very serious claims, but both the claims in the complaint and the TRO application are not well-founded.[1] No TRO or preliminary injunction of any kind is supported by existing law or the facts before this court. Plaintiffs have voted. The

---

[1] Counsel for Mr. Rogers entered their appearance electronically on Saturday November 1, 2008. This response is filed on Sunday, November 2, 2008 so that the Court has adequate time to review the response prior to the Monday hearing.

right to challenge a vote or to address concerns about illegal ballots or illegal activities is statutory and important. The sweep of the proposed injunction would violate common sense, the rights of persons not before the court and years of relevant case law and would not be in the public interest. Most importantly, no intimidation has occurred. The proposed injunction fails as it is a statutorily disfavored injunction, Plaintiffs do not have a substantial likelihood of prevailing on the merits, there will be no irreparable injury if the injunction is denied, the balancing of hardships weighs in the Defendants' favor, the injunction would be adverse to the public interest and the Plaintiffs do not have standing. There is a strong public interest in ensuring the integrity of elections. New Mexico law provides for a specified procedure for challenging individual votes to further this interest. Plaintiffs' requested relief would violate both this public interest and settled procedures and would deprive Defendants of their rights to conduct lawful election activities.[2]

2. Facts.

On or about October 20, 2008, Patrick J. Rogers engaged the services of Mr. Romero, to assist in an investigation of ACORN, the Association of Community Organizations for Reform Now. ACORN's voter registration, "get out the vote" activities and partisan political endorsement and related activities have been controversial and highly publicized. Reportedly, ACORN is under investigation in 12 states by the FBI. The media has reported that ACORN is under investigation in New Mexico. ACORN is party to a consent decree in Washington (state). Decl. of Patrick J. Rogers, attached.

Patrick J. Rogers is an attorney for New Mexico Victory 08 ("NM08"), a part of the New Mexico Republican Party. Mr. Rogers was in charge of litigation for NMO8. He

---

[2] Counsel for Patrick J. Rogers would also respectfully request the opportunity to supplement this brief prior to the TRO hearing scheduled for Monday, November 3, at 1 pm.

has represented the New Mexico Republican Party and many Republican officials and candidates for many years. He also represented Ralph Nader in 2004 in the attempt by the Democratic Party of New Mexico to keep Ralph Nader off the ballot. Shortly after that case was successfully concluded in the New Mexico Supreme Court, ACORN employees picketed outside of Mr. Rogers office carrying signs, including one that read "Nader + Bush = Pat Rodgers (sic)". Decl. of Patrick J. Rogers, attached.

In his capacity as counsel to NM08, Mr. Rogers provided Exhibit 2 (labeled Ex. A to Plaintiff's TRO application) to Defendant Romero for his review and analysis. Mr. Romero had been recommended to Mr. Rogers by a prominent member of the New Mexico bar. Exhibit 2 had been prepared in conjunction with a separate licensed New Mexico Private Investigator, who had also been retained by Pat Rogers on behalf of his client NMO8.

Mr. Rogers spoke several times by phone with Mr. Romero and met with him prior to retaining him. Mr. Romero's experience, demeanor, abilities and references were impressive. Mr. Romero was asked to review Exhibit 2 and to determine whether the available public information contained therein suggested reasonable questions about fraudulent registrations or fraudulent voting.

Based on his experience and further discussions with Mr. Rogers, Mr. Romero indicated further investigation and personal interviews would be reasonable. Mr. Rogers and Mr. Romero discussed several times the need to be sensitive to the possibility the persons listed could be innocent victims of identity theft, or various other possible errors. Mr. Rogers and Mr. Romero discussed the possibility that the people listed may be legitimately registered and legitimately voting. Mr. Rogers and Mr. Romero discussed the

need for every eligible citizen to vote. It was not Mr. Roger's intent to harass or intimidate Plaintiffs, but only to exercise his and his client's right to investigate ACORN and to attempt to assist with a fair election process. Mr. Roger's actions were motivated by an effort to ensure that every eligible voter, votes and that honest votes are not diluted and the ACORN investigation had nothing to do with intimidation or harassment of Plaintiffs.

    3. <u>Plaintiffs do not satisfy the standard for a Temporary Restraining Order.</u>

The main purpose of a TRO and/or of a preliminary injunction is to preserve the status quo. *See Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986). Where the opposing party has notice of the application for a temporary restraining order, such order does not differ functionally from a preliminary injunction. *Dilworth v. Riner*, 343 F.2d 226, 229 (5th Cir. Miss. 1965). The United States Court of Appeals for the Tenth Circuit has set forth the requirements for the issuance of a preliminary injunction under rule 65 of the Federal Rules of Civil Procedure: ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction, and (4) the injunction would not be adverse to the public interest. *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065-66 (10th Cir. 2001); *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1231 (10th Cir. 2005) (The district court may grant a temporary restraining order if the moving party shows: "(1) substantial likelihood of prevailing on the merits; (2) irreparable injury if the injunction is denied; (3) greater injury to the movant absent the injunction than that which

the opposing party will suffer under the injunction; and (4) lack of adverseness to the public interest.").

Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). To show that the extreme remedy of a preliminary injunction should issue, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law." *N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306 (1984). Federal courts have the inherent equitable power to issue a preliminary injunction only when it is necessary to protect a movant's entitlement to a final equitable remedy. *Chavez v. Bd. of Educ. of Tularosa Mun. Sch.*, 2007 U.S. Dist. LEXIS 17091, 21-22 (D.N.M. Feb. 13, 2007); *See also De Beers Consol. Mines v. United States*, 325 U.S. 212, 219-223 (1945). The Supreme Court and the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) ("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.") (quoting *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)).

> As this Court noted in *Steinmetz v. Steinmetz, et. al*, there are
>
> three types of specifically disfavored preliminary injunctions [for which] a movant must 'satisfy an even heavier burden of showing that the four [preliminary injunction] factors… weigh heavily and compellingly in movant's favor before such an injunction may be issued': (1) preliminary injunctions that

alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Steinmetz v. Steinmetz,* CV-08-0629 Judge Browning, Memorandum Opinion and Order at 3 *quoting, O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F. 3d 973, 975 (10th Cir. 2004) (en banc), *aff'd* 546 U.S. 418 (2006).

The 10th Circuit disfavors such injunctions. *Dominion Video Satellite* at 1154.

4. Application.

   a. Disfavored Injunction.

Plaintiffs' requested relief falls within the third category of disfavored injunctions because granting Plaintiffs their requested relief would "afford the movant all the relief that it could recover at the conclusion of a full trial on the merits". The Plaintiffs have seven prayers for relief. *See,* Plaintiffs Complaint at 7. All of Plaintiffs' prayers will be fulfilled should this Court grant them a preliminary injunction. Unlike *Border Network for Human Rights et al v. County of Otero*, No. 07-CV-01045 MV/WPL (D.N.M. Sept 19, 2008), in this case Plaintiffs would obtain all relief from a preliminary injunction that they could obtain after a full trial on the merits. In *Border Network*, the plaintiffs also sought monetary damages in addition to injunctive relief. Here, Plaintiffs prayer for relief does not include monetary damages. As a result, this case falls within the third category of disfavored injunctions. For this reason alone and the reasons that follow, this Court should deny Plaintiffs' motion.

   b. Substantial likelihood of prevailing on the merits.

The Plaintiffs seek prospective relief in that they seek that Defendants be enjoined from "undertaking activities to challenge the validity or legitimacy of Plaintiffs' votes cast in the November 4, 2008 General Election or the June 2008 Primary Election". Challenging votes in elections is expressly allowed. See eg Section 1-4-1 NMSA 1978

and Section 1-2-21 to 1-2-31 NMSA 1978. No person has a right to cast a vote immune from lawful statutory challenge. Indeed, the Supreme Court of New Mexico has recognized the importance of legitimate elections, "the purity of the election demands that the illegal votes be purged. This prevents a manifest injustice. We cannot permit illegal voters to elect to office a person whom the qualified voters would not have elected." *Kiehne v. Atwood*, 93 N.M. 657, 662 (N.M. 1979). Yet, Plaintiffs ask that the Court exempt them and untold others from the challenge provisions of the election law. No one has a right to such exemption, and there is no probability of success on the merits.

        c.  <u>There will be no Irreparable injury if the injunction is denied.</u>

Plaintiffs have already voted. Therefore, they will suffer no harm if the injunction is denied. Any challenge to their votes would be in accordance with New Mexico statutes regulating elections. The purpose of a temporary restraining order is to restrain future conduct which would harm the plaintiff or change the status quo, but the Plaintiffs here seek to restrain past conduct. The alleged wrongful acts did not keep Plaintiffs from voting. They have cast their votes, and so there is nothing to restrain, except possibly a challenge expressly allowed by statute.

To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 107, n. 8, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983). The harm which Plaintiffs seek to restrain lies not in the future, but occurred in the past. Plaintiffs claim that, "Without an injunction from the Court, Plaintiffs will be forced to abandon their right to vote or face continued harassment and intimidation". *See,* Application for TRO at 10. Plaintiffs, however, have already voted and have provided no

basis that Defendants may challenge their vote, even though that action is allowed by state law. The TRO cannot change the fact that the Plaintiffs have already voted. That has already occurred.

To the extent Plaintiffs seek an injunction against any challenge raised pursuant to statute, such a challenge cannot be considered harm. It is a lawful process, sanctioned by statute. It is hardly irreparable injury to be subject to the law.

> d. <u>The threatened injury to the movant does not outweigh the injury to the party opposing the preliminary injunction.</u>

The third element to be considered requires a balancing of the interests of the parties. Plaintiffs have a right to vote, which they have exercised. But Mr. Rogers also has a right to see that his vote, and the votes of other electors, are not diluted by the casting of unlawful ballots. The United States District Court for the Southern District of Ohio recognized that individuals have a valid interest in "maintaining a process by which to challenge the eligibility of registered voters prior to the election in order to prevent possible dilution of their own votes." *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004). Granting the TRO would deprive Mr. Rogers of his right to protect his interest, his client's interest and also fails to advance any interest of the Plaintiffs, who have already voted.

It should also be noted the New Mexico election code does not provide exclusive remedies for control and scrutiny of elections. In *Gunaji v. Macias*, 130 N.M. 734, 741 (2001), the New Mexico Supreme Court recognized that the grounds for an election challenge need not be found in the election code, While the Court was not looking at a registration challenge in that case, the principle is the same. The right to vote, and the correlative right to vote without having one's vote diluted by unlawful votes, are

fundamental.

Plaintiffs' requested injunction order requests two categories of relief. First, that Defendants be enjoined from intimidating, threatening or coercing a class of potential voters, despite any evidence that this will occur. Second, Plaintiffs ask that Defendants be enjoined from challenging their ballots which have already been placed into the mail to be cast. As argued below, Plaintiffs do not have standing to seek relief for a broad, unspecified class of voters. Moreover, entering an order on this basis will be a hardship to Defendants as it will require Defendants, and many others, to seek to adhere to a vague standard of not "intimidating" any of a possible class of voters. This sweepingly broad injunctive request would undoubtedly enjoin lawful First Amendment activities of Defendants and would be too vague for Defendants to determine what they could and could not do lawfully in accord with the First Amendment. Refusing to enter an injunctive order would not be a hardship to Plaintiffs because they are not seeking relief as to themselves on the first part of the order. To the extent that they are seeking relief as to their individual cases, there is no evidence whatsoever that intimidation or harassment occurred or that any claimed wrongdoing will be repeated. As to the second part of the order, entering an injunction will also violate Defendants' rights to engage in lawful election conduct. If Plaintiffs' votes were challenged, if they are lawfully cast, the election officials would allow them to be counted. If for whatever reason the votes are not lawfully cast, they would not be counted. Either way, this is lawful election conduct, expressly authorized by New Mexico statutes. Refusing to enter an injunction does not harm Plaintiffs because they are not entitled to an injunction restraining lawful election conduct.

e. <u>The injunction would be adverse to the public interest.</u>

There is a lack of public interest in enjoining an individual from lawful election conduct, including pursuing challenges of questionable ballots or registrations. Of course, if a challenge is made to any individual vote, and appropriate election officials determine the vote to be valid, the challenge does not harm the voter. If the challenge is accepted on the other hand, it furthers the public interest and provides confidence in the process and in the integrity of elections. It also furthers the public's interest in ensuring that lawful votes are not diluted by the inclusion into the election process of fraudulent votes. There is a strong public interest in ensuring the integrity of elections. New Mexico unquestionably has a legitimate interest in ensuring that voters are properly and timely registered and in protecting its voters from third-party fraud or unintentional or negligent mishandling of registration applications. *League of Women Voter's of FL v. Browning*, No. 08-24213, (D.Fl. 2008). "Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Voter fraud also devalues and dilutes the vote of each legitimately voting citizen. *Ortiz v. City of Philadelphia*, 28 F.3d 306, 318 (3rd Cir. 1994) ("Nothing undermines democratic government more quickly than fraudulent elections. Any practice that impairs a fair process...devalues and dilutes the vote of each citizen, including each minority citizen who has lawfully voted"); *Ohio Republican Party v. Brunner*, 2008 U.S. App. LEXIS 21573, *5 (6th Cir.) ("Enabling the casting of one vote does little good if another voter fraulently cancels it out"). Furthermore, there can be no question that voter fraud has the ability to affect the ultimate outcome of an election. *See, e.g., Scheer v. City of Miami*, 15 F. Supp. 2d 1338 (D.Fl. 1998) (discussing "massive" fraudulent voting in

mayoral election leading state to void all absentee ballots which resulted in a different winner).

In this particular case, the Bernalillo County Clerk many weeks ago determined that there may be more than 1500 suspect voter registrations in the county. Those registrations were turned over to law enforcement. Appropriate law enforcement may investigate and interview individuals in particular instances to determine whether their registrations or votes are valid. The information concerning ACORN's activities currently in the hands of the Bernalillo County Clerk suggests significant fraud in the election process. Decl. of Patrick J. Rogers, attached.

As already noted, New Mexico provides a right to challenge votes, and the New Mexico Supreme Court has emphasized the importance of honest elections. *Kiehne v. Atwood*, 93 N.M. 657, 662 (N.M. 1979). Plaintiffs are, in essence, asking that the rules regarding challenges be suspended as to them and untold others, despite the public interest in allowing only those persons entitled to vote to cast ballots. Plaintiffs may be eligible to vote, in which case their votes must be counted, but to provide an exemption from the lawful scrutiny of voting would clearly be contrary to the public interest.

    f.   Standing.

Plaintiffs have no standing to bring this matter. Article III of the Constitution limits the exercise of judicial power to "Cases" and "Controversies," and the core doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). A plaintiff must establish three elements to satisfy the minimum constitutional requirements of standing. First, the plaintiff must have

experienced an "injury in fact," that is, an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent." *Id.* Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* Third, it must be likely, not speculative, that the injury will be redressed by the trial court's favorable decision. *Id.* at 561. The plaintiffs have the burden of alleging facts establishing these three elements. *See, Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998).

> The elements of constitutional standing are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case. *Defenders of Wildlife*, 504 U.S. at 561, 112 S. Ct. at 2136. Consequently, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id. State of Utah v. Babbitt*, 137 F.3d at 1204. *Natural Arch & Bridge Soc'y v. Alston*, 98 Fed. Appx. 711, 715 (10th Cir. Utah 2004).

The threshold standing inquiry in no way depends on the allegations of a plaintiff's contention that the challenged conduct is illegal. *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004), *citing, Whitmore v. Arkansas*, 495 U.S. 149, 155, 109 L. Ed. 2d 135, 110 S. Ct. 1717 (1990). "[The] standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake". *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (U.S. 2000).

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 105, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983). To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *Id.* at 101-02. Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *Id.* at 102. The threatened

injury must be "certainly impending" and not merely speculative. *Tandy,* supra, *citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 190 (U.S. 2000) (quotation omitted). A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction. *Id., citing, Whitmore v. Arkansas*, 495 U.S. 149, 158, 109 L. Ed. 2d 135, 110 S. Ct. 1717 (1990). A plaintiff seeking retrospective relief, on the other hand, satisfies the "injury in fact" requirement if she suffered a past injury that is concrete and particularized. *Id., citing, Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11, 132 L. Ed. 2d 158, 115 S. Ct. 2097 (1995).

In this case, Plaintiffs cannot and will not be able to show "injury in fact". The Plaintiffs seek prospective relief in that they seek that Defendants be enjoined from, "undertaking activities to challenge the validity or legitimacy of Plaintiffs' votes cast in the November 4, 2008 General Election or the June 2008 Primary Election". Challenging votes in elections is expressly allowed. *See,* Section 1-4-1 NMSA 1978 and Sections 1-2-21 to 1-2-31 NMSA 1978. Plaintiffs' provide no basis to suggest that any lawfully cast ballot will not be counted or that these Defendants could prevent a valid ballot from being properly counted.

Next, Plaintiffs have not and cannot establish "a causal connection between the injury and the conduct complained of." *See, Lujan v. Defenders of Wildlife*, supra. One of the Plaintiffs was not even home when Mr. Romero visited and the other voluntarily spoke with Mr. Romero. Plaintiffs claim that Mr. Romero intimidated them into not voting fails because both Plaintiffs have already voted. *See,* Plaintiffs' Application for TRO at 4.

Third, it is only speculative, and not likely that the injury will be redressed by the trial court's favorable decision. Defendants claim that, "Without an injunction from the Court, Plaintiffs will be forced to abandon their right to vote or face continued harassment and intimidation". *See,* Application for TRO at 10. Plaintiffs, however, have already voted and have provided no basis that Defendants could stop any valid vote.

### g. Plaintiffs' Voter Intimidation Claims fail.

Plaintiffs claim that Defendants violated 42 U.S.C. §§ 1971 and 1973 by intimidating, threatening, coercing, and/or attempting to intimidate, threaten or coerce Plaintiffs for voting or attempting to vote. *See,* Complaint at 6. Such claims fail as a matter of law and the Defendants will not prevail on the merits as such.

In, *United States v. Edwards,* 333 F.2d 575 (5th Cir. 1964), the United States filed a Complaint and a motion for a preliminary injunction against a sheriff alleging he had, "threatened, intimidated, and coerced and attempted to threaten, intimidate, and coerce non-registered Negro citizens of voting age in Rankin County for the purpose of discouraging them from registering to vote and from voting for candidates for federal office". *Id. at* 576. The sheriff struck and beat an African American named Grim who was standing in the Circuit Clerk's Office waiting for two other African Americans to finish registering to vote, and at the same time, two other people, believed to be the sheriff's deputies, struck two African Americans who were registering. *Id.* The complaint further charged that "On February 1, 1963, and continuing to the time of the filing of this complaint, the defendant threatened, intimidated, and coerced and attempted to threaten, intimidate, and coerce non-registered Negro citizens". *Id.* The preliminary injunction was sought on the basis of the described incident and the allegation that, "The defendant

will, unless enjoined by this Court, continue to engage in acts and practices similar to those set forth in this complaint". *Id.* The trial court denied the motion because appellee's assault on the African Americans was not intended to interfere with registration and was an isolated occurrence for which injunctive relief was improper. On appeal, the court affirmed because there was no proof of a recurrence or a likelihood of recurrence of appellee's acts. There was no evidence that the trial court had abused its discretion in determining credibility or motive and the findings of fact were not clearly erroneous. *Id.* at 578.

In *Brooks v. Nacrelli*, 473 F.2d 955, 956 (3d Cir. Pa. 1973), the Republican Party employed members of the police department to work at the polls for Republican Party candidates. Plaintiffs sought to enjoin this activity arguing, 1) that partisan political activity by a "significant number of the municipality's policemen" on behalf of the Republican Party violates the equal protection clause of the Fourteenth Amendment; 2) that this activity violates those sections of the Civil Rights Acts prohibiting intimidation of voters (42 U.S.C. §§ 1971(b), 1983, 1985(3)); and 3) that this activity violates First Amendment rights of free political expression. *Id.* at 957. They argued that the presence of police at the polls in the capacity of Republican Party committeemen creates an atmosphere of intimidation towards all those holding contrary political views, which, in turn, stifles free political expression, "specifically with regards to political activity and voting in favor of the Democratic Party." *Id.* at 958. The Court rejected this argument, holding that there was no evidence that this action in any way stifled First Amendment rights. *Id.* at 958. Such is the case here, there is no evidence that Defendants in any way stifled First Amendment rights and in fact, both Plaintiffs have already voted. With

regard to the alleged intimidation tactics, when confronted by Mr. Romero, Plaintiff could have simply told him she would not talk with him. Mr. Romero certainly had a right to knock on Ms. Escobedo's door as many people do during elections and Ms. Escobedo certainly had the right to refuse to speak with him.

   h. <u>Plaintiffs' 42 U.S.C. § 1985 claims fail.</u>

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971) sets forth the requirements that must be met by a plaintiff seeking to state a claim under § 1985(3): to come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws', it must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another person was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.' *Taylor v. Gilmartin*, 686 F.2d 1346, 1356 (10th Cir. 1982). The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general tort law can be avoided by giving full effect to the congressional purpose -- by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights

secured by the law to all. *Smith v. Yellow Freight System, Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976).

The Courts have made it clear that politically motivated conspiracies do not fall within the gambit of 42 U.S.C. § 1985(3). In *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 836 (1983), the Supreme Court held:

> In the first place, it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans. The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate Negroes and give them equal access to political power. The predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro. Although we have examined with some care the legislative history that has been marshaled in support of the position that Congress meant to forbid wholly nonracial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

*See also, Fiske v. Lockheed-Georgia Co., Div. of Lockheed Corp.*, 568 F. Supp. 590 (ND Ga 1983) (42 USCS § 1985(3) does not reach politically motivated conspiracies); *Concepcion v. Zorrilla*, 309 F. Supp. 2d. 201 (DC Puerto Rico 2004) (Because scope of 42 USCS § 1985(3) could not be extended to include conspiracies based exclusively on political discriminatory animus, defendants were entitled to summary judgment on employee's conspiracy claim); *McCabe v. Macaulay,* 450 F. Supp. 2d. 928 (ND Iowa 2006) (42 USCS § 1985(3) is not intended to provide remedy against discriminatory

animus directed at class based on wholly non-racial political affiliation); *Marino v. Bowers,* 483 F. Supp. 765 (ED Pa 1980), affd (1981, CA3 Pa) (Discrimination against members of rival political party in connection with patronage practices is not kind of invidious discrimination prohibited by 42 USCS § 1985); *Grimes v. Smith*, 776 F.2d. 1359 (7th Cir. 1985) (42 USCS § 1985(3) does not reach wholly nonracial but politically motivated conspiracy among private parties to mislead voters in city primary election). At issue in this case is the attempt to investigate ACORN, using public information and lawful means. Decl. of Patrick J. Rogers, attached. These individuals were not identified by Mr. Rogers and no intent to deny them their right to vote based on race is possible. *See, Martin v. Delaware Law School of Widener University,* 625 F. Supp. 1288, affd without op (3rd Cir. 1989) 884 F.2d 1384, cert den (1989) 493 U.S. 875 (Claims under § 1985 must be pleaded with specificity in order to withstand motion to dismiss; broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state claim upon which relief can be granted). Plaintiffs do not and cannot establish facts to support those allegations. The proof to the contrary is that Mr. Rogers desired to investigate ACORN's activities and registrations and activities related to registrations. There was no other intent in this case. Thus, Plaintiffs' § 1985 claims must accordingly fail.

In addition, Plaintiffs claims fail because they were never denied access to their fundamental right to vote, and in fact have voted. No basis exists to suggest a valid vote will not be counted. Hence no damages have resulted. *See, Van Meter v. Sanford*, 152 F.2d. 961 (5th Cir. 1946) (Action against warden of a federal penitentiary to recover damages for alleged conspiracy to deprive plaintiff of his right to prosecute a civil suit,

pending in federal district court, was properly dismissed as not setting forth a claim on which relief could be had, where the civil suit in question, though hindered and jeopardized, was not dismissed and no actual damage resulted); *see also, Croy v. Skinner,* 410 F. Supp. 117 (ND Ga 1976) (Isolated threats and accusations coupled with derogatory references to plaintiff's character and ethnic background do not establish class based discrimination or conspiratorial action in violation of plaintiff's civil rights). Therefore, since Plaintiffs have exercised their fundamental right to vote, no damage has resulted and their 42 U.S.C. § 1985 claim fails.

WHEREFORE, Defendant Patrick J. Rogers prays for an order of the Court denying Plaintiffs Application for Temporary Restraining Order and dismissing this matter.

Respectfully submitted,

/s/ Jason Bowles
Jason Bowles
B.J. Crow
Bowles & Crow
P.O. Box 25186
Albuquerque, N.M. 87125-5186

I hereby certify that a
true copy hereof was electronically
submitted this 2nd day of November, 2008 to:

Diego Bernal
Nina Perales
MALDEF
110 Broadway
Suite 300
San Antonio, TX 78205
210-224-5476

Joseph A Sapien
Phillip G Sapien
Sapien Law LLC
PO Box 965
Albuquerque, NM 87103
(505) 842-5979

/s/ Jason Bowles
Bowles & Crow